IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

In re:

Andrew J. Cikar and
Cheryl L. Cikar,   (Chapter 7)

    Debtors.   Case No. 12-14328

Andrew J. Cikar and
Cheryl L. Cikar,

    Plaintiffs
v.   Adv. No. 13-13

Blackhawk Community Credit Union,

    Defendant.

MEMORANDUM DECISION

    This case is very similar to *Thrun v. Blackhawk Community Credit Union*, Adv. No. 12-231, also decided today. Cross motions for summary judgment ask whether the credit union has a valid security interest in the debtor's vehicle. On November 5, 2007, the plaintiff debtors signed a Loanliner Open-End Plan Signatures PLUS with Blackhawk Community Credit Union ("Blackhawk"). The credit agreement created subaccounts under which the debtor was able to take out loans or "advances," and provided that Blackhawk would have a security interest in "all property described in any receipt, voucher or other document you receive for an advance."

    On October 14, 2011, the debtors requested an advance under the plan to finance the purchase of a 2003 GMC Sierra. With the advance, Blackhawk issued an Advance Receipt to the debtors which stated that "[t]his advance is governed by the terms of your Consumer Lending

1

Plan." It also provided that "[y]ou are giving a security interest in your shares and deposits in the credit union, as well as the collateral described on page 2." The second page identified the vehicle by year, make, model, and VIN number.

While the description of collateral slightly differs from the *Thrun* case, Blackhawk and the debtors in this case make the same arguments regarding the sufficiency of the description. For the reasons provided in the attached *Thrun* memorandum decision, the description of the collateral in the credit agreement is sufficient. It is possible to determine objectively that the 2003 GMC Sierra was purchased under the credit agreement with an advance from Blackhawk. The parties also intended for the vehicle to be covered by the agreement. Paragraph 6 of the credit agreement specifically mentions a subaccount for "New Cars." The description of "all property described in any receipt, voucher or other document you receive for an advance" in this case is sufficient to describe the debtors' vehicle as after acquired collateral. The defendant may have summary judgment dismissing this adversary proceeding.

Dated: June 11, 2013

_____
ROBERT D. MARTIN
UNITED STATES BANKRUPTCY JUDGE

2

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

In re:

Jamie L. Thrun, (Chapter 7)

    Debtor. Case No. 12-14405

Jamie L. Thrun,

    Plaintiff

v. Adv. No. 12-231

Blackhawk Community Credit Union,

    Defendant.

MEMORANDUM DECISION

Cross motions for summary judgment ask whether the credit union has a valid security interest in the debtor's vehicle. In February 2012, the plaintiff debtor signed a Consumer Lending Plan with Blackhawk Community Credit Union ("Blackhawk"). The plan created subaccounts under which the debtor was able to take out loans or "advances," and provided that Blackhawk would have a security interest in "all goods, property, or other items purchased under this Plan . . . either now or in the future."

In May 2012, the debtor requested an advance under the plan to finance the purchase of a 2008 Saturn Vue. With the advance, Blackhawk issued an Advance Receipt to the debtor which stated that "[t]his advance is governed by the terms of your Consumer Lending Plan." It also provided that "[y]ou are giving a security interest in your shares and deposits in the credit union,

1

as well as the collateral described on page 2." The second page identified the vehicle by year, make, model, and VIN number.

The debtor argues that no security interest in the vehicle ever attached, because the Consumer Lending Plan does not contain a sufficient description of the collateral. The debtor further argues that the Advance Receipt cannot serve as the security agreement because it was not signed. Blackhawk responds that the specific description of the vehicle in the Advance Receipt satisfies the description requirement.

Under Federal Rule of Civil Procedure 56, "the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also* Fed. R. Bankr. P. 7056(a). For purposes of Rule 56, a material fact is one related to a disputed matter that might affect the outcome of the action. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986); *see also In re Rieck*, 439 B.R. 698, 702 (Bankr. W.D. Wis. 2010).

State law generally determines the nature and extent of property rights in a debtor's assets in bankruptcy. *Butner v. United States*, 440 U.S. 48, 55 (1979). Wisconsin Statutes § 409.203 provides that a security interest is enforceable against a debtor and third parties with respect to the collateral where: (1) value has been given; (2) the debtor has rights in the collateral; and (3) the debtor has authenticated a security agreement that provides a description of the collateral. Wis. Stat. § 409.203(2).

Under Wisconsin Statutes § 409.108, "a description of personal or real property is sufficient, whether or not it is specific, if it reasonably identifies what is described." Wis. Stat. § 409.108(1). Section 409.108 goes on to provide examples of reasonable identification:

> Except as otherwise provided in sub. (4), a description of collateral reasonably identifies the collateral if it identifies the collateral by:

2

>   (a) Specific listing;
>
>   (b) Category;
>
>   (c) Except as otherwise provided in sub. (5), a type of collateral defined in chs. 401 to 411;
>
>   (d) Quantity;
>
>   (e) Computational or allocational formula or procedure; or
>
>   (f) Except as otherwise provided in sub. (3), any other method, if the identity of the collateral is objectively determinable.

Wis. Stat. § 409.108(2). However, a "supergeneric" description is not sufficient: "A description of collateral as 'all the debtor's assets' or 'all the debtor's personal property' or using words of similar import does not reasonably identify the collateral." Wis. Stat. § 409.108(3).

With regard to after-acquired collateral, Wisconsin Statutes § 209.204 states:

>   (1) After-acquired collateral. Except as otherwise provided in sub. (2), a security agreement may create or provide for a security interest in after-acquired collateral.
>
>   (2) When after-acquired property clause not effective. A security interest does not attach under a term constituting an after-acquired property clause to:
>
>>   (a) Consumer goods, other than an accession when given as additional security, unless the debtor acquires rights in them within 10 days after the secured party gives value; or
>>
>>   (b) A commercial tort claim.

Wis. Stat. § 409.204. In this case, there is no dispute that value was given, that the debtor acquired rights in the collateral, and those rights were acquired within 10 days of value being given. The only issue in contention is the sufficiency of the description of collateral.

In *Milwaukee Mack Sales v. First Wisconsin Nat'l Bank of Milwaukee*, the Wisconsin Supreme Court held that a broad description of after-acquired property satisfied the description requirement. *Milwaukee Mack Sales v. First Wisconsin Nat'l Bank of Milwaukee*, 93 Wis. 2d 589, 287 N.W.2d 708 (1980). The court held that the word "equipment" used in a security agreement granting the bank a "security interest in all Debtor's Equipment . . . whether now

3

owned or hereafter acquired" was sufficient to give the bank a security interest in the debtor's after-acquired truck. *Id.* at 592. The court explained that,

> "if we are to carry out the draftsmen's intention and permit the secured creditor to claim a perfected security interest in after acquired property, comparatively general descriptions of the collateral must suffice for it would be impossible in most such cases for the secured creditor to describe the collateral with any greater precision at the beginning of the agreement."

*Id.* (quoting White and Summers, Unif. Commercial Code § 23-3 (Hornbook Series 1972)).

In its analysis, the court did not distinguish the standard for a sufficient description based on the fact that it was in a security agreement as opposed to a financing statement. Indeed, the court favorably cited White and Summers' conclusion that the description requirements for security agreements and financing statements should be evaluated under the same broad standard despite the different purposes of the documents:

> "The two description requirements are intended to perform different functions . . . The function of 9-203 [regarding security agreements] is that of a statute of frauds; it is designed to minimize disputes between parties to the transaction over whether an agreement exists and over whether a certain item of collateral is or is not included in the security agreement. The function of the description in 9-402 [regarding financing statements] is to put third parties on notice of the secured creditor's claim. . . ."
>
> Despite these differences, White and Summers conclude "that the standards under 9-203 and 9-402 should not be different and that courts should validate rather broad descriptions under either of them."

*Milwaukee Mack*, at 597-98 (quoting White and Summers, Unif. Commercial Code § 23-3). This comports with Article 9 drafter Professor Grant Gilmore's lament on the discrepancies between the early § 9-203 and § 9-402 description provisions: "[t]here is no excuse for the failure of the two sections to mesh with respect to the description requirement." Grant Gilmore, Security Interests in Personal Property, § 11.4 (1965). The 2001 amendments to the Uniform Commercial Code also endorse this approach. Revised § 9-504 states that a financing statement must provide "a description of collateral pursuant to Section 9-108," which is the same provision under which

4

the description of collateral for purposes of a security agreement is analyzed. *See* UCC § 9-504. Wisconsin did not enact this revision to Wis. Stat. § 409.502, but under *Milwaukee Mack*, the description requirements should be evaluated under the same standard anyway.

In their treatise on the UCC, Professors White and Summers have set out a two-step analysis for determining the sufficiency of a description of collateral: first it should be determined whether the claimed property fits within a broad reading of the descriptive language, and then the court should consider the factual question of what the parties actually intended. White, Summers, & Hillman, Unif. Commercial Code § 31-3 (6th ed.). The court in *Milwaukee Mack* took the same approach. First, the court determined that trucks objectively fit within a broad reading of the category of equipment. Then the court examined the intent of the parties. The court looked to a stipulation by the parties regarding the sale of the truck, which stated that the truck was being sold to the debtor "for use as equipment . . . in its trucking business" and determined that "in the framework of these transactions, the parties appropriately considered the truck as 'equipment.'" *Id.* at 600.

A bankruptcy court for the Northern District of Illinois has held that a description of collateral similar to the description in this case was sufficient under the Uniform Commercial Code. *In re Martinez*, 179 B.R. 90, 94 (Bankr. N.D. Ill. 1994). The credit card application signed by the debtor stated that the creditor retained "a security interest under the Uniform Commercial Code in all merchandise charged to your Account." *Id.* at 92. The court held that the description sufficiently described merchandise purchased using the credit card:

> Finding a security agreement, it must next be determined whether the phrase "all merchandise charged to your account" adequately describes Tandy's collateral. A description of personal property is adequate if it reasonably identifies what is described. UCC § 9–110; *In re Legal Data Systems, Inc.,* 135 B.R. 199, 201 (Bankr. D. Mass. 1991); *In re Niles,* 72 B.R. 84, 85–86 (Bankr. N.D. Ill. 1987). The language used in McDuff's security agreement satisfies this specificity condition. *Ziluck,* 139 B.R. at 46; *In*

5

re Keneco Financial Group, Inc., 131 B.R. 90, 92 (Bankr. N.D. Ill. 1991) (phrase "all inventory, chattel paper, accounts, contract rights, equipment and general intangibles" satisfied the specificity requirement); *In re Elia,* 18 B.R. 89 (Bankr. W.D. Pa. 1982) (phrase "all goods purchased under this account" fulfills the condition).

*Id.* at 94. At the time that *Martinez* was decided, UCC § 9-110 provided that "any description of personal property or real estate is sufficient whether or not it is specific if it reasonably identifies what is described." The current UCC § 9-108 and Wisconsin Statutes § 409.108 retain similar language for the core standard, and have expanded the explanation with examples of reasonable identification and a proviso that "supergeneric" descriptions are not sufficient. In addition to examples such as "category" and "quantity," a description of collateral reasonably identifies the collateral if it identifies the collateral by "any other method, if the identity of the collateral is objectively determinable." UCC § 9-108(b); Wis. Stat. § 409.108(2). It does not appear that the updated, expanded definition would change the reasoning of either *Milwaukee Mack* or *Martinez.*

In this case, Blackhawk argues that the specific description of the vehicle in the Advance Receipt clearly satisfies the description requirement. However, since the Advance Receipt was not signed, it cannot be considered part of the security agreement. Wisconsin does not follow the collage doctrine or composite document theory with respect to security agreements. *See In re Hofmeister*, 1994 Bankr. LEXIS 1590, at *6 (Bankr. W.D. Wis. 1994). Under the collage doctrine, courts are willing to "overlook formal words of grant" and instead "cumulate a variety of written documentation to piece together a security agreement sufficient under UCC 9-203." Barkley Clark, *The Law of Secured Transactions Under the Uniform Commercial Code* ¶ 2.02[1][D] (2013). However, "in Wisconsin a different rule, announced in *Barth Bros. v. Billings*, 68 Wis. 2d 80, 88, 227 N.W.2d 673 (197[5]), requires specific words granting a security interest." *Hofmeister*, 1994 Bankr. LEXIS 1590, at *6. In *Barth Brothers*, the debtor had signed notes stating that they were secured by financing statements, and the financing statements

6

described the collateral and were signed by both the debtor and the creditor. *Barth Bros.*, 68 Wis. 2d at 88. The Wisconsin Supreme Court declined to apply the collage doctrine and held that no valid security interest was created because the financing statements did not contain words of grant. *Id.* at 89.

In this case, unlike *Barth Brothers*, there was a signed security agreement, the Consumer Lending Plan, which provided the specific grant of a security interest and was not a mere promissory note. Therefore, the question here is whether the description of collateral in the signed Consumer Lending Plan of "all goods, property, or other items purchased under this Plan . . . either now or in the future," on its own is a sufficient description. Had Blackhawk required the debtor to sign the Advance Receipt, it would have greatly strengthened their position. *See Tesar v. Sears, Roebuck & Co. (In re Tesar)*, 1991 WL 11002288, at *3 (Nov. 7, 1991) (considering signed purchase receipts where merchandise was charged to a Sears charge account). Nonetheless, the description in the Consumer Lending Plan is sufficient. The description of "all goods, property, or other items purchased under this Plan" is not too broad a description, nor one that Wisconsin Statutes § 409.108 disallows ("all the debtor's assets" or "all the debtor's personal property"). Wis. Stat. § 409.108(3). The identity of the collateral is "objectively determinable." It is possible to make an objective determination that the 2008 Saturn Vue was purchased under the plan with an advance from Blackhawk. Following the two-step analysis used in *Milwaukee Mack*, the intent of the parties was to have the vehicle be covered by the security agreement. The first page of the Consumer Lending Plan specifically addresses a subaccount for a "New Auto." Therefore, like the description of collateral as "all merchandise charged to your Account" in *Martinez*, the description of "all property purchased

7

under this Plan" is sufficient in this case to describe the debtor's vehicle. The defendant may have summary judgment dismissing this adversary proceeding.

Dated: June 11, 2013

*/s/ Robert D. Martin*

ROBERT D. MARTIN
UNITED STATES BANKRUPTCY JUDGE

8